**IN THE COURT OF APPEALS OF IOWA**

No. 25-0185
Filed April 9, 2025

**IN THE INTEREST OF L.S. and C.S.,**
**Minor Children,**

**A.M., Mother,**
 Appellant.
_____

 Appeal from the Iowa District Court for Scott County, Christine Dalton, Judge.

 A mother appeals the termination of her parental rights to two children. **AFFIRMED.**

 Patricia Rolfstad, Davenport, for appellant mother.

 Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

 Jennifer Olsen, Davenport, attorney and guardian ad litem for minor children.

 Considered without oral argument by Greer, P.J., and Langholz and Sandy, JJ.

**LANGHOLZ, Judge.**

In our child-welfare cases, we often stress that parents only have so many chances to make improvements before the children's need for permanency prevails. Here, the mother was given a second chance. Earlier in the proceedings, the juvenile court declined to refer the case for termination, keeping the two children in their father's custody and giving the mother one more opportunity to show she could safely and soberly care for her children. With that second chance, the mother chose to hire a hitman to kill the father.

Thankfully, the mother's plan was thwarted by law enforcement. She later pleaded guilty to a federal murder-for-hire charge. And when the State petitioned to terminate her parental rights, the juvenile court agreed. The mother now appeals, arguing that termination is not in the children's best interests because she believes that, with enough treatment and time, she could one day become a capable parent.

But our best-interests analysis turns on what is best for the children—not for the parent. By the termination hearing, the children had been adjudicated in need of assistance and out of the mother's custody for over two years. And they are not safe in her care. Because terminating the mother's parental rights best serves the children's safety and welfare, we affirm.

I.

The mother and her two children—a daughter and son—first came to the attention of the Iowa Department of Health and Human Services in April 2022, after the mother drove under the influence of alcohol while her then-six-month-old son

was in the car.[1]  The mother attempted suicide about a month later.  And the Department imposed a safety plan that prevented the mother from having unsupervised contact with the children and required her to participate in mental-health and substance-use treatment.  In July, the children were adjudicated in need of assistance and placed in their father's care and custody, where they have remained ever since.

Over the next year, the mother's progress was uneven.[2]  When she consistently attended treatment, she made good strides and showed promise in her ability to care for the children.  But then she would retreat from treatment, flout Department supervision restrictions, and exhibit self-harm behaviors or suicidal ideation.  Her social media posts were at times erratic—depicting the mother drinking alcohol, maligning the children's father, and falsely accusing the daughter's paternal grandfather of molesting the daughter.  The mother also "called in over twenty child abuse reports to HHS" and called in "at least three welfare checks to law enforcement" about the father—none were substantiated. As for her alcohol use, the mother completed treatment in November 2022 but promptly resumed using alcohol and disavowed any dependence.  All the while, the children were kept in limbo, as her visits fluctuated between being semi-supervised and fully supervised.

---

[1] We avoid using the parties' names to respect their privacy because this opinion— unlike the juvenile court's order—is public.  *Compare* Iowa Code § 232.147(2) (2024), *with id.* §§ 602.4301(2), 602.5110.

[2] During this time, the mother filed her first appeal—challenging the juvenile court's initial disposition order and arguing that the Department was not making reasonable efforts to return her children—and we affirmed.  *See In re L.S.*, No. 22-1839, 2023 WL 1811046 (Iowa Ct. App. Feb. 8, 2023).

In September 2023, the juvenile court issued a dispositional order. After detailing the mother's progress and regress, the court chose to give her another chance to show she could safely care for the children, rather than direct the county attorney to initiate termination proceedings. The juvenile court kept the children in the father's custody and "strongly urged [the mother] to take an honest look at her own behavior and get the help she has so far ignored or pretended was unnecessary."[3]

The mother's conduct did not improve. She threatened to kidnap the children several times. She also threatened to kill the father. Her false reports about the father to the Department and law enforcement increased in both frequency and severity, leading to criminal charges for harassment and false emergency reports.

And she tried to hire a hitman to kill the father. About two months after the dispositional order, she contacted a person over Snapchat to ask if he knew any "shady people" because she needed to make the father "disappear." When the person asked "how sketchy," the mother replied, "ideally murder." The person relayed the messages to an undercover federal agent, who contacted the mother and posed as a hitman. The mother stated, "I need someone out of the picture so in prison or no longer on the planet." The agent offered to do it for $2000 and the mother said "deal." Two days later, the mother contacted the agent asking how soon he could kill the father, stating it was "kinda urgent." She then provided the

---

[3] The mother also appealed that order—arguing the children should have been returned to her custody—and we affirmed. *See In re L.S.*, No. 23-1564, 2023 WL 8801927 (Iowa Ct. App. Dec. 20, 2023).

father's home address—where the children also lived—and wired him $200. She was charged with the federal offense of using interstate commerce facilities in the commission of murder-for-hire. *See* 18 U.S.C. § 1958. And she was placed in federal custody while the charge was pending.

So the State petitioned to terminate her parental rights. Shortly before the termination hearing, she pleaded guilty to the federal offense. As part of the guilty plea, she was released on bond and with extensive conditions of release pending sentencing. By that time, she had spent roughly a year in federal custody. Her sentencing was set for March 2025.

After a one-day hearing, the juvenile court terminated the mother's rights to the two children under paragraphs "d," "e," and "h" of Iowa Code section 232.116(1) (2024).[4] The court found that terminating her rights best served the children, as they were not safe in her care and "remaining in limbo for additional time while their mother might achieve mental stability and long term heath is not in their best interests." The mother now appeals, disputing only whether termination is in the children's best interests.[5]

II.

To terminate the mother's parental rights, the State must show by clear and convincing evidence that termination is in the children's best interests. *See* Iowa Code § 232.116(2). To guide our best-interests analysis, we consider the

---

[4] The mother's rights to the son were also terminated under Iowa Code section 232.116(1)(k).

[5] Although we normally follow a three-step termination framework, when a parent does not contest one or more steps on appeal, we need not address them. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

children's safety, as well as their "physical, mental, and emotional condition[s] and needs." *Id.* And we review the juvenile court's ruling de novo, giving due weight to the court's fact-finding and credibility determinations. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021).

The children's safety is best served by terminating the mother's parental rights. After the September 2023 dispositional order, when the children were three and two years old, she made credible threats to kidnap the children. She then gave their address to a person she believed was a hitman, placing them in direct danger of violence, saying nothing of the emotional toll of witnessing the murder of their father. The mother acknowledges none of these harms to her children in her petition on appeal, instead focusing on her own mental-health struggles and past efforts to improve.[6] Indeed, she believes that with enough time and services, she could one day care for the children.

But our focus is on what best protects the children, not what is most beneficial to the parent. Because she spent a year in federal custody, the children have not seen the mother in over a year. They were not safe in her care then, nor are they now. The children—now five and three years old—have endured over two years of significant instability. They are long overdue for permanency and security. Placing their welfare at the forefront, the children are best served by termination. And so we affirm the termination of the mother's parental rights.

**AFFIRMED.**

---

[6] The mother only once addresses harm to the children, arguing that "permanently losing" a parent through termination would "harm their emotional development."